UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ASHLEY D. TUCKER                                                                            PLAINTIFF

V.                                      No. 4:21-CV-141-DPM-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                        DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Chief Judge D. P. Marshall, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I. Introduction

On April 26, 2018, Ashley D. Tucker ("Tucker"), filed an application for disability and disability insurance benefits, alleging that her disability began on September 1, 2011.[1] (Tr. at 14). Tucker appeared by video at a hearing before an

---

[1] Tucker, through her attorney, amended her alleged onset date to December 1, 2017. (Tr. at 34–35).

Administrative Law Judge ("ALJ") on December 18, 2019. *Id*. Later, the case was reassigned to another ALJ. *Id.* On May 15, 2020, without any supplemental hearing, the second ALJ issued a decision finding that Tucker was not disabled. (Tr. at 14–23). On December 14, 2020, the Appeals Council denied Tucker's request for review. (Tr. at 1–4). The ALJ's decision now stands as the final decision of the Commissioner, and Tucker has requested judicial review.

For the reasons stated below, this Court should reverse the final decision of the Commissioner and remand for further review.

## II. The ALJ's Decision

At Step One of the required five-step analysis,[2] the ALJ found that Tucker had not engaged in substantial gainful activity since December 1, 2017. (Tr. at 17). At Step Two, the ALJ determined that Tucker has the following medically determinable impairments: (1) carpal tunnel syndrome; (2) bipolar disorder; (3) major depressive disorder; (3) anxiety; (4) panic disorder; (5) adjustment disorder; (6) post-traumatic stress disorder; (7) and personality disorder. *Id.*

At Step Three, the ALJ determined that Tucker's impairments did not meet or equal a listed impairment. (Tr. at 17–18). Before proceeding to Step Four, the ALJ determined that Tucker had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following additional limitations: (1) she

---

[2] 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

can no more than occasionally push and pull with the bilateral upper extremities; (2) she can no more than frequently handle and finger bilaterally; (3) she is able to perform work where interpersonal contact is incidental to the work performed and the complexity of tasks is learned and performed by rote, with few variables, and little judgment; and (4) the supervision required is simple, direct, and concrete. (Tr. at 18–19).

At Step Four, the ALJ determined that Tucker was unable to perform any of her past relevant work. (Tr. at 21). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Tucker's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions such as collator operator, content checker, and photocopy machine operator. (Tr. at 22–23). Thus, the ALJ concluded that Tucker was not disabled. *Id*.

### III. Discussion

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Tucker's Arguments on Appeal

Tucker contends that the evidence supporting the ALJ's decision to deny her application for benefits is less than substantial. She argues that: (1) the ALJ did not fully and fairly develop the record; (2) the ALJ erred in assessing Tucker's credibility; and (3) the RFC did not incorporate all of Tucker's limitations. The Court finds support for Tucker's first argument.

Because Tucker's mental impairments serve as the basis for this reversal, the Court will limit its discussion to only those impairments.[3]

Tucker, who regularly met with both a therapist and psychiatrist during the relevant time-period, had three inpatient psychiatric hospitalizations (in 2016, 2017, and 2019). (Tr. at 46–47, 54, 59, 71, 332–334, 404–408, 502, 847). She suffered from anxiety, personality disorder, depression, and suicidal ideation. She took Xanax, Prozac, Lithium, and Clonazepam, which were prescribed by her psychiatrist. (Tr. at 353, 537).

Tucker tried to live a normal life and maintain employment. Treatment notes show that work attempts precipitated her hospitalizations by causing her to have suicidal and homicidal ideation due to work stress. (Tr. at 47–50, 332–350, 404–408, 432–456). During one of her hospital stays, Tucker's provider noted

---

[3] *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

maladaptive behavioral patterns that would require "acute stabilization in a protected and monitored environment." (Tr. at 358–361). In June 2018, Tucker's treating therapist said that she was suffering from low mood, hypersomnia, and emotional dysregulation. (Tr. at 455–456). The therapist wrote that Tucker was "chronically at risk of losing her job." *Id*. A few months earlier, multiple treatment notes showed that Tucker was missing a lot of work due to her mental problems. (Tr. at 432–436). After several failed work attempts, Tucker tried to work for ten hours a week at a veterinary clinic in late 2019 so she could pay for psychiatric treatment. (Tr. at 742–745). Even ten hours a week, however, was too much. She was hospitalized at Conway Behavioral Hospital from December 2, 2019, through December 7, 2019. (Tr. at 847).

Records from Tucker's four years of psychiatric treatment showed ups and downs. At times Tucker would feel hopeful and more stable.[4] (Tr. at 408, 420, 426). Then, when she tried to get back to a normal life after an inpatient hospitalization, she struggled with problems related to her mood, sleep, and anxiety. She explained at her hearing that she could not socialize or do many things for herself. (Tr. at 55–58). Her mother took care of her.[5]

---

[4] The ALJ highlighted the times that Tucker seemed to be improving, and ignored notes showing destabilization. (Tr. at 20).

[5] The ALJ noted that Tucker could perform "a number of daily activities." (Tr. at 20). He listed just two: she could drive a car and shop in stores. She said at the hearing that she could not

The ALJ predicated his decision on two early-in-time Disability Determination Services ("DDS") expert opinions.[6] One psychiatric expert opined in September 2018 that Tucker could perform unskilled work, which is the simplest type of work from a mental function standpoint. (Tr. at 77–78). A second expert affirmed that opinion in November 2018. (Tr. at 94–96). On the other hand, Tucker's treating psychiatrist issued an opinion in October 2018, which portrayed a woman who could not work at all, no matter what level of skill was required. (Tr. at 568). He stated that she had no useful ability to: (1) maintain attention or concentration; (2) keep to a schedule: (3) have regular attendance at work; (4) perform at a consistent pace; (5) respond appropriately to workplace change; (6) behave in an emotionally stable manner; and (7) demonstrate reliability. *Id*. The ALJ wholly discounted this opinion, stating that it conflicted with some evidence that Tucker had brief periods of stability. (Tr. at 21).

The DDS experts only reviewed records from 2018 and earlier and did not examine or evaluate Tucker. Tucker's mental state continued to deteriorate through 2019, resulting in a five-day inpatient psychiatric hospitalization after she tried to

---

go into a store, and driving a car does not correlate to having the mental capacity to work a full-time job.

[6] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

work. (Tr. at 847–863).⁷ Her therapist and psychiatrist said she could not work. But the ALJ, who only used one paragraph in his decision to summarize Tucker's mental health condition and treatment, relied on the DDS opinions to find her not disabled. (Tr. at 20-21). He did not meaningfully discuss the fact that all work attempts, even part-time work attempts, led to destabilization and hospitalization.⁸

An ALJ has a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994). That duty is not never-ending, especially when the claimant is represented by counsel. But where there is a stark contrast in the medical opinions, or when the DDS opinions predate relevant treatment periods, an ALJ should order a consultative examination. *Gunter v. SSA*, No. 4:20-CV-309-KGB-PSH (E.D. Ark. March 9, 2021); *see also Linden v. Saul*, No. 4:19-CV-545-BSM-JTK (E.D. Ark. March 9, 2020) ("because the non-examining opinions issued well before the end of the relevant time-period, the ALJ should have further developed the record by obtaining a consultative examination.") In this case, Tucker's condition continued to deteriorate after the DDS experts issued their opinions, and the medical opinions were in conflict. Further development was required.

---

⁷ Tucker's chief complaint at intake, according to the hospital treatment note, was: "I wished I would get cancer and die." (Tr. at 847).
⁸ *Cain v. Saul*, No. 2:19-CV-2075-PKH-MEF (W.D. Ark. May 12, 2020) (reversal was proper where ALJ failed to discuss claimant's failed work attempt).

## IV. Conclusion

Accordingly, because the ALJ did not fully and fairly develop the record, his decision is not supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 12th day of October, 2022.

_____
UNITED STATES MAGISTRATE JUDGE